UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISIAM RAY FRIAR,

                     Plaintiff,

-v-

WYNDHAM VACATION RESORTS, INC., et al.,

                     Defendants.

20-CV-2627 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Isiam Ray Friar brings suit against Wyndham Vacation Resorts ("Wyndham"), Derrick Taylor, and Maria Maese, alleging fraud and fraudulent inducement in connection with his purchase of a timeshare in New York. Wyndham, Taylor, and Maese have each moved to dismiss the complaint for failure to state a claim. For the reasons that follow, the motions are denied.

**1.  Background**

The following facts are drawn from the amended complaint and presumed true for the purposes of this motion. (*See* Dkt. No. 10 ("AC").)

Plaintiff Isiam Ray Friar is a California resident who often travels to New York City for work. (AC ¶¶ 1, 12.) In March 2014, he was staying at the Alex Hotel in Midtown when Defendant Derrick Taylor approached him in the hotel lobby and asked if he was a frequent guest at the hotel. (AC ¶¶ 7-8.) Friar replied that he was. (AC ¶ 9.) Taylor then informed Friar that Wyndham, a Florida-based corporation, had recently bought the Alex Hotel and was planning to convert it into a timeshare resort called Midtown 45. (AC ¶¶ 10-11.) He asked if Friar would like to hear more about how he could continue to stay at the property once it was repurposed, and Friar said he would. (AC ¶¶ 11-12.)

1

Taylor invited Friar to accompany him to the Midtown 45 sales office, where he proceeded to describe what he called a "fantastic investment opportunity." (AC ¶ 13.) Once the Alex Hotel became Midtown 45, Taylor said, only timeshare owners would be able to obtain accommodations at the property. (AC ¶ 16.) According to Taylor, timeshare owners would save money on accommodations and secure "an investment in New York City real estate that would significantly increase in value over the course of time." (AC ¶¶ 17-18.)

Taylor explained that purchasing a timeshare would allow Friar to use his annual ownership points to obtain lodging at Midtown 45 and other timeshare properties. (AC ¶¶ 20-21.) Friar responded that "his only interest was in obtaining at least twenty-one days of accommodations at Midtown 45." (AC ¶ 22.) With this in mind, Taylor recommended that Friar purchase at least 1,000,000 annual points, which would give his requests for accommodations priority over requests made by those with lesser ownership interests. (AC ¶ 27.) At that level, Taylor said it would be "highly unlikely" that Friar "would ever encounter any difficulties in obtaining accommodations at Midtown 45 when needed." (*Id.*)

Convinced that a Midtown 45 timeshare would meet his New York City housing needs, Friar asked Taylor how much it would cost to purchase a timeshare with 1,000,000 annual points, and he was told that it would cost more than $85,000, but that he could potentially finance his purchase through Wyndham if he could make a down payment of $16,000 that day. (AC ¶¶ 30-31.) When Friar said he would not be able to make such a large down payment, Taylor spoke to his supervisor, Maria Maese, and they told Friar that if he could manage a down payment of roughly $8,200, his credit score qualified him to purchase a timeshare on an installment plan and his purchase would be financed in-house. (AC ¶¶ 33-39.) To avoid the larger down payment, Maese told Friar that she was splitting his purchase into two separate

contracts, one that he would execute that day and one that would be finalized a month later.  (AC ¶¶ 41, 43.)  When Friar asked if he could take a few minutes to review the first contract, she told him he needed to sign quickly, as "she was needed at another closing."  (AC ¶ 45.)  So he signed the document, and Taylor reminded him that his second contract needed to be finalized by April 15.  (AC ¶¶ 47, 49.)

On April 12, Friar met Taylor at the sales office to sign the second contract.  (AC ¶ 52.)  He also asked a few questions about provisions in the first contract, including a merger clause that provided that "[n]o representations or warranties, oral or written, other than the representations set forth in said documents, have been relied upon by the parties."  (AC ¶ 56.)  Taylor assured him that this was "just terminology contained in the form agreement," and that Friar "could rely on the information provided by him and … Maese."  (AC ¶ 57.)  Satisfied, Friar executed the second contract and began making monthly payments on April 17.  (AC ¶¶ 58-59.)

Soon, however, Friar's relationship with Wyndham soured.  Between June 2014 and February 2017, Friar tried roughly twenty times to obtain accommodations at Midtown 45 via Wyndham's online reservation system, but he was never successful.  (AC ¶ 62.)  On ten of these occasions, Friar conducted an Internet search and found that accommodations were, in fact, available on those dates.  (AC ¶¶ 63-64.)  In February 2017, after having paid Wyndham more than $80,000, Friar stopped making his monthly payments (AC ¶¶ 69-70), and on February 28, 2020, he brought suit in state court against Defendants Wyndham, Taylor, and Maese (together, "Defendants"), alleging fraud and seeking rescission of the timeshare contract.  Wyndham removed the suit to federal court on March 27, 2020 (*see* Dkt. No. 1), and Defendants have each moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. Nos. 12, 47, 56.)

**I.     Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In resolving a motion to dismiss, the court "must accept as true all well-pl[eaded] factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

Plaintiffs alleging fraud claims, however, must satisfy not just Rule 12(b)(6), but also Rule 9(b), under which they must "state with particularity the circumstances constituting" the alleged fraud.  Fed. R. Civ. P. 9(b).  A plaintiff alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Schneider v. Pearson Educ., Inc.*, No. 12-CV-6392, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).  Although the circumstances constituting fraud must be stated with particularity, "Rule 9(b) provides that fraudulent intent may be averred generally, as long as the complaint provides a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.* (internal quotation marks and citation omitted).

**II.    Discussion**

Wyndham, Taylor, and Maese have each filed motions to dismiss under Rule 12(b)(6).

4

They argue 1) that Friar has not pleaded fraud with particularity, 2) that Friar's claim for rescission is unavailing,[1] and 3) that Friar's demand for punitive damages ought to be dismissed. The Court addresses each argument in turn.

### A.     Fraud

To sustain a claim for fraud under New York law, a plaintiff must adequately establish: "(1) representation of a material fact; (2) falsity; (3) scienter; (4) reasonable reliance; and (5) injury." *Gate Techs., LLC v. Delphix Cap. Markets, LLC*, No. 12-CV-7075, 2013 WL 3455484, at *6 (S.D.N.Y. July 9, 2013) (brackets and citation omitted). In addition, a plaintiff alleging fraud must satisfy the heightened pleading requirements of Rule 9(b), which requires "(1) specify[ing] the statements that the plaintiff contends were fraudulent, (2) identify[ing] the speaker, (3) stat[ing] where and when the statements were made, and (4) explain[ing] why the statements were fraudulent." *Schneider*, 2013 WL 1386968, at *4 (internal citation omitted). "Where multiple defendants are asked to respond to allegations of fraud, Rule 9(b) requires that the complaint inform each defendant of the nature of his alleged participation in the fraud." *Am. Arb. Ass'n, Inc. v. DeFonseca*, No. 93-CV-2424, 1996 WL 363128, at *8 (S.D.N.Y. June 28, 1996).

As a threshold matter, Friar has pleaded fraud with the requisite particularity. He has identified the statements that were allegedly fraudulent, among them Taylor's assurances that Friar's requests for accommodations would "take priority over other requests made by those with a lesser ownership interest" and that "it would be highly unlikely [that Friar] would ever encounter any difficulties in obtaining accommodations at Midtown 45 when needed." (AC

---

[1] This argument appears in full form only in Wyndham's motion to dismiss. (*See* Dkt. No. 13 at 9-11.)

5

¶ 27.)  He has identified the speaker – Taylor – and noted that the statements were made on March 3, 2014, in the lobby of the Alex Hotel at 205 East 45th Street in Midtown.  (AC ¶¶ 7-8.)  And he has explained why the statements were fraudulent: in this case, because Friar was never able to reserve a room at Midtown 45.  (*See* AC ¶¶ 62-64.)  In addition, Friar has informed each defendant of the nature of their alleged participation in the fraud:  Taylor made the allegedly fraudulent statements; Maese was instrumental in getting Friar to sign the contract (*see* AC ¶¶ 35-47); and both of them were agents of Wyndham, which Friar alleges had knowledge of the fraudulent scheme based on a number of complaints filed with the Better Business Bureau reporting a pattern of misrepresentation in selling practices (AC ¶¶ 73-74).

Friar has also met the requirements to state a claim for fraud under New York law.  The first two requirements are "representation of a material fact" and "falsity."  *Gate Techs.,* 2013 WL 3455484, at *6 (S.D.N.Y. July 9, 2013) (citation omitted).  Here, the material fact at issue was whether Friar would be able to obtain accommodations at Midtown 45 if he purchased a 1,000,000-point timeshare.  Friar has established falsity, meanwhile, by alleging that he was unable to book a room on twenty separate occasions — and that, on at least ten of those times, Midtown 45 appeared to have rooms available.  (AC ¶¶ 62-64.)

The third requirement is scienter.  Unlike in a securities fraud case, where plaintiffs must plead scienter "with particularity" (*see* 15 U.S.C. § 78u-4(b)(2)(A)), a plaintiff alleging common law fraud need only satisfy Rule 9(b), under which "fraudulent intent may be averred generally." *Schneider*, 2013 WL 1386968, at *4 (internal quotation marks and citation omitted).  In a common law fraud action, scienter "can be pleaded by alleging motive and clear opportunity, or by alleging facts constituting strong circumstantial evidence of conscious behavior or recklessness on the part of defendants."  *G-I Holdings, Inc. v. Baron & Budd*, No. 01-CV-0216,

2003 WL 193502, at *12 (S.D.N.Y. Jan. 29, 2003) (citing *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995)).  To plead motive, a plaintiff must "allege facts indicating 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures.'" *Id.* (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).  "To plead opportunity, one must allege facts that demonstrate that the defendant is well positioned to carry out the fraudulent transaction." *Id.* (internal quotation marks and citation omitted).  Here, Friar has adequately alleged both motive and opportunity.  With respect to motive, Friar has alleged that Defendants lied "to increase sales; lock purchasers into paying never-ending and ever-escalating management, maintenance and other fees … [and] to induce members of the general public into purchasing a Wyndham timeshare."  (AC ¶¶ 71-72.)  These concrete benefits are enough to suggest that Defendants stood to gain by portraying Wyndham timeshares as a lucrative and desirable investment.  As for opportunity, both Taylor and Maese are alleged to be agents of Wyndham (AC ¶¶ 3-4) who were involved in selling timeshares; both were clearly well positioned to carry out the alleged fraud.

      The fourth requirement is reasonable reliance.  Defendants argue that it was not reasonable for Friar to rely on Taylor's oral representations as to the availability of rooms because the merger clause in the contract stated explicitly that "[n]o representations or warranties, oral or written, other than the representations set forth in said documents, have been relied upon by the parties."  (*See* Dkt. No. 13 at 8-9; Dkt. No. 47–1 at 13-14; Dkt. No. 57 at 13-14.)  But in assessing whether reliance is reasonable, New York courts will look beyond a merger clause to the "entire context of the transaction," including "the sophistication of the parties." *Wurtsbaugh v. Banc of Am. Sec. LLC*, No. 05-CV-6220, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006) (citing *Emergent Capital Inv. Mgmt. LLC v. Stonepath Grp., Inc.*, 343

F.3d 189, 195 (2d Cir. 2003)).  Courts are reluctant to find reliance on oral communications to be reasonable where the "plaintiffs are sophisticated parties and the statement or omission relates to a business transaction that has been formalized in a contract."  *Id.*  That is not the situation here.  Friar is not a sophisticated investor.  *Cf. Emergent*, 343 F.3d at 196 (describing plaintiff as a "sophisticated investor" where plaintiff had "represented that it had knowledge and experience in financial and business matters, and that it could readily evaluate the risks of the transaction" (internal quotation marks omitted)).  In fact, by his own admission, Friar was confused about the merger clause and asked for clarification.  (AC ¶¶ 56-57.)  Given that Taylor assured Friar that the merger clause was merely "terminology contained in the form agreement," and that Friar "could rely on the information provided by him and … Maese" (AC ¶ 57), the Court concludes that Friar has adequately alleged that he reasonably relied on Taylor's oral representations.

The last requirement is injury, which Friar has no problem establishing.  Friar spent more than $80,000 on a timeshare whose benefits he was unable to enjoy.  (AC ¶ 69.)  If the transaction was fraudulent, as Friar alleges it was, then the money he sank into the purchase certainly constitutes an injury.  Friar has therefore adequately pleaded fraud, and Defendants' motions to dismiss this claim are denied.

### B. Fraudulent Inducement

In addition to alleging fraud, Friar also seeks rescission of the timeshare contracts on the basis that he was fraudulently induced into signing them.  Under New York law, a claim for fraudulent inducement "must satisfy the same elements as a claim for common law fraud."  *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020).  A plaintiff stating a claim for fraudulent inducement must show that "the defendant … made a misrepresentation of a material fact, that was known to be false and intended to be relied on when made, and that plaintiff justifiably relied on that misrepresentation

8

to its injury." *Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (citation omitted). Given that the elements for fraud and fraudulent inducement are effectively the same, the fact that Friar has adequately pleaded the former means that he has also adequately pleaded the latter.

Wyndham argues, however, that Friar's request for rescission ought to be dismissed because he waited unreasonably long to make it. According to Wyndham, "Plaintiff's delay in seeking judicial rescission of the Agreements is unreasonable" because Friar "made payments under the Agreements for nearly five years" and "delayed an additional three years" before seeking to rescind them. (Dkt. No. 13 at 11.) Under both federal and New York law, it is true that "if a party seeks to rescind a contract on the ground of fraud, he must act promptly." *Int'l Motor Sports Grp., Inc. v. Gordon*, No. 98-CV-5611, 1999 WL 619633, at *5 (S.D.N.Y. Aug. 16, 1999). But whether Friar's supposed delay was reasonable "is a factual question for the jury and is not a proper basis for a motion to dismiss under Rule 12(b)(6)." *Brownstone Inv. Grp., LLC v. Levey*, 468 F. Supp. 2d 654, 663 (S.D.N.Y. 2007); *see also West Tsusho Co. v. Prescott Bush & Co.*, No. 92-CV-3378, 1993 WL 228072, at *4 (S.D.N.Y. June 23, 1993) ("Ordinarily, the question of what is a reasonable time for rescission is a question of fact for the jury." (internal citation omitted)). Friar may or may not have sought rescission within a reasonable time, but that is a fact-dependent inquiry the Court cannot resolve at this stage.[2] Wyndham's motion to dismiss this claim is denied.

---

[2] Wyndham cites two cases for the proposition that courts have found delays shorter than the one at issue here to be unreasonable as a matter of law. *See GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F. Supp. 2d 471, 483-84 (E.D.N.Y. 2009) (finding a seven-month delay unreasonable as a matter of law); *Saitta v. New York City Transit Auth.*, 866 N.Y.S.2d 62, 63 (1st Dep't 2008) (finding a "nearly four-month delay" unreasonable as a matter of law). But both of these cases are inapposite. For one thing, they both concern motions for summary judgment, not motions to dismiss, which means that the courts were able to evaluate

9

### C. Punitive Damages

Finally, Defendants take issue with Friar's request for punitive damages. Under New York law, "punitive damages are not available in the ordinary fraud and deceit case, but they may be available in fraud actions where the fraud is gross and involves high moral culpability." *Shanahan v. Vallat*, No. 03-CV-3496, 2004 WL 2937805, at *11 (S.D.N.Y. Dec. 19, 2004) (internal quotation marks and citation omitted). Defendants argue that Friar's request for punitive damages should be dismissed as a matter of law because his claims "arise from his remorsefulness in entering into [the contracts] rather than fraudulent, intentional, wanton and reckless, or grossly negligent acts on [Defendants'] part." (Dkt. No. 13 at 12; Dkt. No. 47–1 at 15; Dkt. No. 57 at 15.) At this early stage, however, the Court is reluctant to dismiss Friar's claim – especially since the parties have not yet exchanged any discovery. *See China Trust Bank of New York v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 290 (S.D.N.Y. 1997) ("The Court takes no position as to whether punitive damages are warranted in this case, [as] that is a matter to be decided after all evidence has been admitted at trial.") Defendants' motions to dismiss Friar's punitive damages claim is therefore denied.

## III. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are DENIED.[3] Defendants shall answer the complaint by April 9, 2021.

---

evidence as to whether the alleged delays were reasonable or unreasonable. For another, both involve a delay by an insurer, not by an individual person, and the rule against unreasonable delay "applies with even greater vitality in the insurance context due to the nature of the parties' obligations." *GuideOne*, 593 F. Supp. 2d at 483. Finally, in *Saitta*, the court left open the possibility that it might have decided the issue differently had there been "a reasonable explanation for the delay," underscoring the need for further discovery here. *See* 866 N.Y.S.2d at 63.

[3] Friar's motion for extension of time (Dkt. No. 54) is also denied as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 12, 47, 54, and 56.

SO ORDERED.

Dated: March 19, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge